# SUPREME COURT:

## HENRY A. PETRIE agt. EMMA F. MYERS *et al.*

*Mortgage — latent equity — bankers' liens.*

M., one of the defendants, entered into a contract with H. in the summer
of 1872 to the effect that H. would furnish him with building materials,
and that M. would pay H. therefor at the market rates, a portion by
a mortgage and the balance in cash. H. furnished the materials as
they were required by M., and at various times in August and Septem-
ber M. gave H. four promissory notes for $1,000 each. Three of the
notes were indorsed by H. and delivered to the Manufacturers and
Builders' Bank, which discounted the same for him. The fourth note
was also indorsed by H. and offered by him to the Eleventh Ward
Bank for discount, and was by it refused, and they never paid any
sum to him on the credit thereof; but when applied to by H., said bank
refused to surrender the note, but claimed to hold the same for a gene-
ral balance of account owing by him to the bank, arising on previous
dealings with him. On September 25, 1872, M. and wife executed
and delivered to H. the bond and mortgage in question to secure the
sum of $7,000, which was justly owing to H. for materials furnished,
and in final settlement of the account for such materials a credit was
given by him on account of said mortgage for the full face thereof. H.
promised to pay the three notes discounted for him by the Manufac-
turers and Builders' Bank out of the proceeds derived from the sale of
the mortgage, and also to procure and surrender to M. the note offered
to the Eleventh Ward Bank for discount, but he was prevented from
performing this promise by the bank's refusing to surrender the same.
It was not intended or agreed at the time the bond and mortgage was
delivered to H. that it was to be assigned to the Manufacturers and
Builders' Bank as security for the notes held by them or for any other
purpose, and the only agreement relating to said notes was as above
stated. H. assigned the bond and mortgage to Daniel P. Ingraham,
jr., who assigned the same to Edward B. Stead (both assignments
being for a valuable consideration), who afterwards duly assigned the
same to plaintiff, who paid therefor the sum of $6,700. The plaintiff
had no notice or knowledge of any claim or equity against said bond

and mortgage, and as an inducement to purchase the same there was shown and delivered to him a certificate of both of the mortgagors, asserting said bond and mortgage to be valid and free from all defenses and equities. In action to foreclose the mortgage:

*Held,* that the bank had no right upon declining a discount to retain the note, and its action was clearly tortious. The bankers' lien does not extend to such paper.

*Held, further,* that even if the right to hold the note were established, the banker had no possible equity in the mortgage. Such an equity could attach, if at all, only in favor of one who had actually negotiated the note or parted with value upon the strength of the security.

Although, as to the receiver there is, perhaps, a case of a latent equity arising out of an implied trust, such an equity is not to be preferred to that of a *bona fide assignee* for full value. Equity will not aid a *cestui que trust* against a *bona fide* purchaser (from a trustee) without notice of the trust.

Where the mortgage was ultimately given to H. without reserve and with a mere understanding as *to the application of the proceeds,* no equity is raised in the security, certainly not as against the plaintiff, who has paid full value and who could not by any *proper inquiry* have learned of the latent equity.

*Special Term, December,* 1877.

ACTION to foreclose a mortgage. The facts are as follows: David J. Myers, one of the defendants, had, in the summer of 1872, a contract with one Loper for the purchase of certain property in the city of New York, which included the premises described in the complaint and other real estate in the immediate vicinity, and was about building thereon. He then entered into a contract with Philip C. Hubbell to the effect that said Hubbell would furnish him brick and other building materials and that Myers would pay said Hubbell therefor at the market rates. A portion of the price was to be paid by a mortgage on the premises described in the complaint and the balance in cash. Hubbell furnished said material as the same was required by Myers, and at various times in August and September, Myers gave to Hubbell four promissory notes for the sum of $1,000 each. Three of said notes were indorsed by Hubbell and delivered to the Manu-

facturers and Builders' Bank, and said bank discounted the same for him. The fourth note was also indorsed by Hubbell and offered by him to the Eleventh Ward Bank for discount but said bank refused to discount the same and never advanced or paid any sum to him on the credit thereof, but when applied to by Hubbell for said note, said bank refused to surrender the same to him and claimed to hold the same for a general balance of account owing by said Hubbell to said bank arising on previous dealings with him. In September, 1872, the premises described in the complaint were conveyed by said Loper to Emma F. Myers, the wife of said David J. Myers and at his request and in compliance with the contract between him and Loper above mentioned. On September 25, 1872, the bond and mortgage described in the complaint was executed and delivered by said Emma F. Myers and David J. Myers to said Philip O. Hubbell to secure the sum of $7,000 and interest. About said sum of $7,000 was at that time justly owing to said Hubbell for building materials furnished on said contract made by him as aforesaid, and in the final settlement of the account for said building materials a credit was given by him on account of said mortgage for the full face thereof. The amount due on said bond and mortgage for principal and interest on December 14, 1877, was the sum of $9,260. When said Hubbell received said bond and mortgage he stated to the said mortgagors that he had "placed" the same, meaning that he intended to assign the same to a purchaser thereof, and the said mortgagors executed the same and delivered it to him to enable him to do so. Said Hubbell promised to pay the three notes which, as above stated, had been discounted for him by the Manufacturers and Builders' Bank, out of the proceeds to be derived from the sale of said mortgage. He also promised, either at this or at a subsequent time, to procure and surrender to Myers the note offered to the Eleventh Ward Bank for discount, but he was prevented from performing this promise by the wrongful act of the

Eleventh Ward Bank in refusing to surrender the same. It was not intended or agreed at the time said bond and mort-- gage were delivered to said Hubbell that the bond and mort- gage was to be assigned to the Manufacturers and Builders' Bank, as security for the notes held by them or for any other purpose and the only agreement relating to said notes was as above stated. Shortly after said bond and mortgage was received by Hubbell he duly assigned the same for a valuable consideration to Daniel P. Ingraham, jr., who thereafter duly assigned the same to Edward B. Stead. Both of said agreements were duly recorded, and thereafter, in Septem- ber, 1873, the said Stead duly assigned the same to plaintiff. On receiving the said assignment the plaintiff paid therefor to Stead the sum of $6,700 in cash. He had no notice or knowledge of· any claim or equity against said bond and mortgage by or on behalf of any person or corporation, and as an inducement to purchase the same there was shown and delivered to him a certificate which had been executed by both of the mortgagors, in which they asserted said bond and mortgage to be valid and free from all defenses and equities. The plaintiff believed the statements contained in said certificate to be true and he relied thereon and he paid his money on the faith thereof and also on the faith of the fact that in and by a conveyance of said mortgáged premises then of record in the office of the register of this city and county said mortgagors had conveyed the same to the defend- ant Stephen J. Wright, subject to said mortgage, and in which it appeared that the amount thereof had been deducted and allowed out of the purchase-price for said conveyance.

*L. S. Goebel*, for plaintiff.

*A. C. Thomas*, for defendant.

BARRETT, *J.* — The Eleventh Ward Bank has no *status* whatever. It had no right, upon declining a discount, to retain

the note, and its action was clearly tortious. The paper was not left for collection, nor for the performance of any banking duty, nor even for safe custody. It is contended that the banker's lien extends *to all securities* which may happen to be in its hands *for any purpose*, and *Barnett* agt. *Brandas* (6 *Manning & Granger*, 629) is cited in support of that proposition. The case holds directly opposite. There, the securities were delivered for " *the performance of a duty as bankers,*" viz., to receive interest on the exchequer bills and to exchange them. It has been admitted, in argument, that if the bills had been delivered merely for the purpose of deposit in a bank there would have been no lien ; and lord Denman cited, with approval, the case of *Lucas* agt. *Darrien* (7 *Taunt*, 278), where it was held that á lease, which was accidentally left with a banker, after he had refused to advance money upon it, was not subject to any lien.

But even if the right to hold the note were established, the banker had no possible equity in the mortgage. Such an equity could attach, if at all, only in favor of one who had actually negotiated the note or parted with value upon the strength of the security.

As to the receiver there is, perhaps, a case of a latent equity arising out of an implied trust. No case has gone the length of preferring such an equity to that of a *bona fide assignee* for full value. On the contrary, equity will not aid a *cestui que trust* against a *bona fide* purchaser (from a trustee) without notice of the trust. Nor is the bank which the receiver represents in the position of an earlier assignee. It cannot, therefore, invoke the rule *qui prior est tempore potior est jure.* It comes to this : The plaintiff, of course, took the mortgage subject to the equities between the original parties. But there were none such ; *nor in the entire chain of title.*

It is unnecessary, therefore, to express an opinion on the much debated question (*Bush* agt. *Lathrop*, 22 *N. Y.*, 535 ; *Moore* agt. *The Metropolitan Nat. Bank* 55 *id.*, 46 ; *Cutts*

agt. *Guild*, 57 *id.*, 233) whether the rule extends to subsequent transferees.

What is claimed is an equity in favor of *entire strangers to the record*, and resting in the mere promise of the mortgagee with respect to a security not in existence at the time of the promise.

It must be added, too, that it will be impossible to find, as matter of fact, what is set up in the answer. The truth is, that the mortgage was ultimately given to Hubbell without reserve, and with a mere understanding as *to the application of the proceeds*, which raised no equity in the security — certainly not as against the plaintiff, who has paid full value and who could not, by any *proper inquiry*, have learned of the latent equity. For what inquiry, it may be asked, was he put upon? Simply as to the validity of the mortgage; possibly as to the equities between the subsequent parties. But as the validity of the mortgage is conceded, and as there were no such equities, the plaintiff's position is stronger than upon a mere estoppel.

There must be judgment for the plaintiff.